23-15479

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

**WILLIAM BARKER,**

Plaintiff-Appellant,

v.

**OSEMWINGIE, et al.,**

Defendants-Appellees.

On Appeal from the United States District Court
for the Eastern District of California

No. 2:16-cv-03008 CKD
Carolyn K. Delaney, Magistrate Judge

**APPELLEES' SUPPLEMENTAL EXCERPTS
OF RECORD VOLUME 1 OF 1**

ROB BONTA
Attorney General of California
JODI L. CLEESATTLE
Senior Assistant Attorney General
CATHERINE WOODBRIDGE
Supervising Deputy Attorney General
DIANA ESQUIVEL
Deputy Attorney General
State Bar No. 202954
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7320
  Facsimile: (916) 322-8288
  Email:  Diana.Esquivel@doj.ca.gov
*Attorneys for Defendants-Appellees State of
Cal., by and through Cal. Dept. of Corr. and
Rehab., Osemwingie, and Ramiscal*

# APPELLEES' SUPPLEMENTAL EXCERPTS OF RECORD
## Volume 1 of 1

| CR | Document | Date | Page(s) |
|---|---|---|---|
| 95 | Defendant's Response to Plaintiff's Objections to Magistrate Judge's Findings and Recommendations | 9/29/22 | 3-9 |
| 93 | Plaintiff's Objections to Magistrate Judge's Findings and Recommendations | 9/15/22 | 10-12 |
| 88 | Plaintiff's Fourth Amended Complaint | 4/12/22 | 13-19 |
| 87 | Order | 4/7/22 | 20-21 |
| 86 | Plaintiff's Third Amended Complaint [erroneously filed as "Second Amended Complaint"] | 4/1/22 | 22-28 |
| 85 | Order | 3/4/22 | 29-30 |
| 83 | Memorandum [in *Barker v. Osemwingie*, Nos. 20-15503/20-155840] | 11/29/21 | 31-35 |
| 63-5 | Declaration of Diana Esquivel in Support of Defendants' Motion for Summary Judgment | 4/24/19 | 36-44 |
| 47 | Plaintiff's [Third] Amended Complaint [erroneously filed as "Second Amended Complaint"] | 1/19/18 | 45-51 |

SA2023302025
37766078.docx

1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  CHRISTINE E. GARSKE, State Bar No. 232879
   Supervising Deputy Attorney General
3  DIANA ESQUIVEL, State Bar No. 202954
   Deputy Attorney General
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone: (916) 210-7320
6    Facsimile: (916) 322-8288
     E-mail: Diana.Esquivel@doj.ca.gov
7  *Attorneys for Defendant State of California, by and*
   *through the California Department of Corrections*
8  *and Rehabilitation*

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE EASTERN DISTRICT OF CALIFORNIA

11                    SACRAMENTO DIVISION

12

13 | **WILLIAM BARKER,** | No. 2:16-cv-03008-DAD-CKD |

14 | Plaintiff, | **RESPONSE TO PLAINTIFF'S** |
   | | **OBJECTIONS TO MAGISTRATE** |
15 | | **JUDGE'S FINDINGS AND** |
   | **v.** | **RECOMMENDATIONS** |
16 | |

17 | **OSEMWINGIE, et al.,** | Action Filed: April 12, 2017 |

18 | Defendants. |

19

20                        **INTRODUCTION**

21        Plaintiff does not object to the Magistrate Judge's Findings and Recommendations (F&R)

22 recommending that his Fourth Amended Complaint be dismissed without leave to amend because

23 the Magistrate Judge's analysis is legally or factually erroneous. Rather, he contends that he filed

24 the wrong version of the Fourth Amended Complaint; he submits a proposed Fifth Amended

25 Complaint (FAC) for the Court's consideration; and he asks that the Court reject the F&R

26 because the proposed FAC complies with the Ninth Circuit's Memorandum. (ECF Nos. 93, 93-1.)

27 The Court should overrule Plaintiff's objections because the proposed FAC still fails to plead a

28 cognizable claim under the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA).

                                    1

**ARGUMENT**

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. While the RA has the additional requirement that the program or activity receive federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act. Thus, courts have applied the same analysis to claims brought under both statutes." *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (citations omitted). In order to state a cognizable claim under the ADA, a plaintiff must allege facts showing he: (1) has a disability; (2) is otherwise qualified to participate in or receive the benefit of "some public entity's services, programs or activities," (3) was excluded from or denied the benefits of a program, activity or service, or otherwise discriminated against, and (4) "such exclusion, denial of benefits, or discrimination was by reason of his disability." *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135-36 (9th Cir. 2001) (stating that a RA claim is analyzed under the same standards). A public entity can be liable for damages under the ADA or RA only "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). Deliberate indifference requires: (1) "knowledge that a harm to a federally protected right is substantially likely," and (2) "a failure to act upon that likelihood." *Duvall*, 260 F.3d at 1139.

The Ninth Circuit remanded this matter finding that the district court should have given Plaintiff an opportunity to cure the deficiencies in his ADA and RA claims. (ECF No. 83 at 3.) The Ninth Circuit advised that "[t]o allege a plausible claim for relief, Barker will need to provide additional facts explaining how the State's failed attempt to provide access to toileting services by means of the Hoyer lift amounted to a denial of such services on account of his disability. In addition, because Barker seeks damages under Title II, he will need to plead facts plausibly suggesting that the defendants acted with deliberate indifference under the test established in

2

1     *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138-40 (9th Cir. 2001)." (ECF No. 83 at 3-4.) The

2     proposed FAC does not comport with the Ninth Circuit's directives.

3         In the proposed FAC, Plaintiff alleges that on March 3, 2015, he needed to use the

4     bathroom and called for assistance; Certified Nursing Assistants Osemwingie and Ramiscal

5     arrived at his cell, bringing with them a Liko Golvo 7007 ES Hoyer lift to transfer him from his

6     wheelchair to the toilet. (FAC ¶¶ 15-16.) Plaintiff alleges that, "based on past experience," he

7     advised Osemwingie against its use and requested a two-person lift to accomplish the transfer to

8     the toilet. (FAC ¶ 16.) Plaintiff alleges that Osemwingie refused and informed Plaintiff that if the

9     Hoyer lift was not used, he was not going to assist Plaintiff. (FAC ¶ 17.) Plaintiff alleges he

10     acquiesced because he had to use the "restroom very badly." (*Id.*) Plaintiff alleges that, "under

11     normal circumstances," he would sit in a sling with four straps—the top two straps are brought

12     over each shoulder and attached to the lift, and the bottom straps are crisscrossed over his legs

13     before they are  attached to the lift, so that his body sat inside the sling, and he would not slide

14     out. (FAC ¶ 18.) Plaintiff alleges that Osemwingie placed the two top straps under his armpits

15     instead of over his shoulders and did not cross the bottom straps between his legs. (FAC ¶ 19.)

16     Plaintiff alleges that he began to protest about how the Hoyer lift was going to hurt his back and

17     irritate the bullet under his scrotum, but Osemwingie refused to listen and reassured Plaintiff that

18     he (Osemwingie) "was going to lift him in a way that didn't hurt the bullet or his back," while

19     Ramiscal and another employee questioned Osemwingie's technique. (FAC ¶ 20.) Plaintiff

20     alleges that when Osemwingie turned on the lift and started lifting him, so that Plaintiff was about

21     six inches high, he heard his low back pop, and he screamed out in pain. (FAC ¶ 21.) Plaintiff

22     alleges that Osemwingie lowered him down, and Plaintiff immediately asked for medical

23     attention, but Osemwingie disconnected him from the lift and everyone left the cell. (FAC ¶ 22.)

24     Plaintiff alleges that Osemwingie and Ramiscal were aware of Plaintiff's physical limitations and

25     / / /

26     / / /

27     / / /

28

Response to Plaintiff's Objections to Magistrate Judge's Findings & Recommendations
(2:16-cv-03008-DAD-CKD)

1   had assisted with transferring him from one position to another before March 3, 2015. (FAC

2   ¶¶ 25-26.)[1]

3        In his first claim under the ADA, Plaintiff alleges that the "State's failed attempt to provide

4   access to toileting services by means of the Hoyer lift amounted to a denial of such services on

5   account of his disability." (FAC ¶ 34.) He further alleges that Hoyer lifts qualify as healthcare

6   appliances under the *Armstrong v. Newsom*, No. 4:94-cv-02307-CW (N.D. Cal. 1994), decree and

7   that defendant had a duty to operate that lift properly under the decree. (FAC ¶ 34.) Plaintiff

8   further alleges that defendant's failure to operate the Hoyer lift was not only an ADA violation,

9   "but the precise type of violation the decree was designed to remedy." (FAC ¶ 35.) Plaintiff

10  proceeds to allege that the improper use of the Hoyer lift to transfer him from his wheelchair, and

11  prolonged delay in receiving medical and nursing assistance, resulted in discrimination against

12  him by prolonging his suffering needlessly. (FAC ¶ 35.) He further alleges that the State's failure

13  to comply with the Hoyer lift instruction manual, over his verbal protests, when transferring him

14  to the toilet constituted deliberate indifference, and "even if it didn't, the State's need to follow

15  the *Armstrong* consent decree … and Hoyer lift's instruction manual was obvious." (FAC ¶ 36.)

16  Plaintiff alleges that because "these acts and omissions were performed without regard for the

17  accommodation Barker requested, the State engaged in deliberate indifference entitling plaintiff

18  to actual damages." (*Id*.)

19       In the second claim under the RA, Plaintiff alleges that Defendants receive federal funding

20  and "[f]or the same reasons set forth in Count One, the defendants were deliberately indifferent to

21  plaintiff's rights under the Rehab Act by improperly operating the Hoyer lift to transfer Barker

22  from his wheelchair, and unreasonably delaying their response to his request for medical and

23  nursing assistance." (FAC ¶¶ 40-41.)

24       These allegations fail to meet the pleading requirements for an ADA and RA claim.

25  Plaintiff was required to plead specific facts to show that he was denied access to toileting

26

27       [1] Under the "Facts" section, Plaintiff asserts additional facts concerning the delay in
    providing him with medical treatment. (FAC ¶¶ 22-24.) These allegations are immaterial and do

28  not provide a separate basis for an ADA or RA claim because the Ninth Circuit did not find that
    these allegations plausibly stated a claim under the ADA or RA. (*See generally*, ECF No. 83.)

4

services because of his disability. *O'Guinn,* 502 F.3d at 1056. Indeed, the Ninth Circuit advised him of the need to "provide additional facts *explaining how* the State's failed attempt to provide access to toileting services by means of the Hoyer lift amounted to a denial of such services *on account* of his disability." (ECF No. 83 at 3, emphasis added.) Plaintiff simply cut and paste this directive into paragraph 34 of the proposed FAC, but did not allege any facts explaining how use of the lift resulted in the denial of toileting service because of his disability. That the State had a duty to operate the lift properly under some purported *Armstrong* decree or instruction manual does not show or establish that the State used the lift improperly, resulting in the denial of toileting services, on account of his disability.[2] Similarly, Plaintiff's allegation that the improper use of the lift resulted in discrimination against him (FAC ¶ 35) is insufficient to meet his pleading burden. Under the ADA, Plaintiff is required to plead facts showing that he was discriminated against because of his disability, not that the denial of some service resulted in discrimination.

The allegations in the proposed FAC also fail to comply with the Ninth Circuit's directive that he is required to "plead facts plausibly suggesting that the defendants acted with deliberate indifference." (ECF No. 83 at 3-4.) Under *Duvall*, deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood. *Duvall*, 260 F.3d at 1139. In the context of a reasonable accommodation request, the plaintiff is required to identify "specific reasonable" and "necessary" accommodations that the defendant failed to provide. *Id*. "When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or

---

[2] The Court need not accept as true Plaintiff's allegations that the manner in which Osemwingie used the Hoyer lift was contrary to the instruction manual. Although the Court is generally confined to consideration of the allegations in the pleadings, the Court may consider documents that are not physically attached to the complaint where the authenticity of the document is not contested and the complaint necessarily relies on them. *Lee v. Cty. of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). The instruction manual to the Hoyer lift Plaintiff alleges was used on March 3, 2015, provides that the lift can be used in the manner Osemwingie did, as Plaintiff described in paragraph 19 of the proposed FAC. (*See* Liko Golvo Instruction Guide at p. 13, ECF No. 67-4 at 59.) Plaintiff cannot reasonably dispute its authenticity since he submitted the manual in opposition to Defendants Osemwingie's and Ramiscal's motion for summary judgment. (*Id*.)

5

1   required by statute or regulation), the public entity is on notice that an accommodation is

2   required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Id*.

3       In the proposed FAC, Plaintiff simply alleged that the State's failure to comply with the

4   instruction manual constituted indifference. (FAC ¶ 36.) No facts are alleged to show that the

5   State knew harm to Plaintiff was substantially likely. Indeed, Plaintiff alleged that Osemwingie

6   reassured him that he (Osemwingie) was going to lift in a way that "didn't hurt the bullet or his

7   back" (FAC ¶ 20), leading to a reasonable inference that Osemwingie took care not to injure

8   Plaintiff during the use of the Hoyer lift. This allegation negates the State's knowledge that

9   Plaintiff was substantially likely to be harmed. To the extent Plaintiff alleges that he sought an

10  accommodation, the allegations are vague and do not satisfy the first prong of *Duvall*. Although

11  Plaintiff alleges that he requested that Osemwingie transfer him to the toilet using a two-person

12  lift (FAC ¶ 16), his allegations in his ADA and RA claims are not directed at the failure to

13  perform a manual lift, but rather at the manner in which the Hoyer lift was used—placing the

14  strap under Plaintiff's arms rather than under his buttocks to cradle his body. (FAC ¶¶ 34-36.)

15  Nor do Plaintiff's allegations concerning the *Armstrong* decree and the lift's instruction manual

16  satisfy the pleading requirements for deliberate indifference. Plaintiff did not plead facts to show

17  that either the decree or the manual required the accommodation Plaintiff requested, a manual lift.

18  Rather, Plaintiff alleges that the decree and manual speak to the proper use and operation of the

19  lift. (FAC ¶¶ 34-36.) For these reasons, Plaintiff's allegations in the RA claim—that defendants

20  were deliberately indifferent by improperly using the lift—are conclusory and also do not satisfy

21  the pleading requirements for deliberate indifference under *Duvall*.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

6

**CONCLUSION**

Plaintiff's proposed FAC is equally deficient as his prior complaints and does not state cognizable claims under the ADA or RA.[3] Plaintiff has clearly demonstrated that he cannot plead such a claim against the State as evidenced by his deficient proposed FAC. The Court should therefore adopt the Magistrate Judge's F&R and dismiss the Fourth Amended Complaint without leave to amend.

Dated:  September 29, 2022                    Respectfully submitted,

                                             ROB BONTA
                                             Attorney General of California
                                             CHRISTINE E. GARSKE
                                             Supervising Deputy Attorney General


                                             */s/ Diana Esquivel*

                                             DIANA ESQUIVEL
                                             Deputy Attorney General
                                             *Attorneys for Defendant State of California,*
                                             *by and through the California Department of*
                                             *Corrections and Rehabilitation*

SA2017304374
36595671.docx

---

[3] The proposed FAC contains other pleading deficiencies not discussed in this response. Here, Defendant only responds to Plaintiff's contention that the proposed FAC "addresses the pleading requirements set forth in the Ninth Circuit's memorandum." (ECF No. 93 at 3:1-3.) Defendant's decision not to address the other defects in this response is not a waiver of those objections, and Defendant reserves the right to raise further objections to the proposed FAC in a properly noticed motion to dismiss under Federal Rule of Civil Procedure 12, if such becomes necessary.

7

SER-9

1  J.D. Zink, SBN 58726
2  **Zink & Lenzi**
   250 Vallombrosa Avenue, Suite 175
3  Chico, California 95926
   Telephone: (530) 895-1234
4  Facsimile: (530) 895-1254

5
6  Attorneys for Plaintiff William Barker

7

8

9                        United States District Court
10                       Eastern District of California
11

12

13
   William Barker,                    )   Case No. 2:16-cv-3008-DAD-CKD-P
14                                     )
15        Plaintiff,                   )
                                       )   **Objections to Magistrate Judge's**
16        vs.                          )   **Findings and Recommendations**
                                       )   **(Clerk's Record 90)**
17                                     )
18  Osemwingie, *et al.*,             )
                                       )
19        Defendants.                  )
                                       )
20                                     )
                                       )
21  _____
22

23

24

25

26

27

28
*Barker v. Osemwingie, Case No. 2:16-cv-3008-DAD-CKD-P*
**Objections to Magistrate Judge's Findings and Recommendations (Clerk's Record 90)**

Page 1

**OBJECTION**

On September 1, 2022, the Honorable Carolyn Delaney issued findings and recommendations regarding the screening of plaintiff William Barker's complaint. Specifically, the magistrate found:

> <u>The allegations in plaintiff's second and fourth amended complaints with respect to plaintiff's claims arising under the ADA and RA are the same</u>. This being the case, the fourth amended complaint must, under the terms of the Ninth Circuit's remand order, be dismissed for failure to state a claim. As it appears at this point that plaintiff cannot state a claim under the ADA or the RA, giving <u>leave to file a fifth amended complaint appears futile</u>.

CR 90, p. 2 (underline added). On the former (the allegations are the same), the magistrate judge was correct. On the latter (a fifth amended complaint would be futile), she was not.

Plaintiff's counsel used the second amended complaint as a template when drafting the fourth, which is why the allegations were the same. Unfortunately, when it came time to file, we mistakenly submitted an earlier draft that still mirrored the allegations from the second, in essence refiling the same complaint a second time. An embarrassing mistake to be sure, but hardly a fatal one.[1]

---

[1] *Owens v. Kaiser Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001), quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (Rule 15's requires that leave to amend "shall be freely given when justice so requires" must "be applied with extreme liberality."); *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) ("Absent prejudice, or a strong showing of any of the remaining *Forman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend.") (emphasis in original).

*Barker v. Osemwingie, Case No. 2:16-cv-3008-DAD-CKD-P*
**Objections to Magistrate Judge's Findings and Recommendations (Clerk's Record 90)**
Page 2

**SER-11**

1    As the court will see from the attached pleading, Barker's (proposed) Fifth
2    Amended Complaint includes greater detail and, more importantly, addresses the
3    pleading requirements set forth in the Ninth Circuit's memorandum.   For these
4    reasons, we would ask the Court to reject the magistrate's findings and
5    recommendations; and accept the proposed Fifth Amended Complaint for filing.

6    Dated: September 14, 2022            ZINK & LENZI

7

8                                        */s/ J.D. Zink*
9                                        J.D. ZINK
10                                       Attorney for Plaintiff Barker

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Barker v. Osemwingie, Case No. 2:16-cv-3008-DAD-CKD-P*
**Objections to Magistrate Judge's Findings and Recommendations (Clerk's Record 90)**

Page 3

SER-12

J.D. Zink, SBN 58726
**Zink & Lenzi**
250 Vallombrosa Avenue, Suite 175
Chico, California  95926
Telephone: (530) 895-1234
Facsimile: (530) 895-1254

United States District Court

Eastern District of California

William Barker,                          )
                                         )
         Plaintiff,                      )    Case No. 2:16-cv-3008-CKD
                                         )
v.                                       )    **Fourth Amended Complaint**
                                         )
California Department of Corrections     )
and Rehabilitation; The State of         )
California,                              )
                                         )
         Defendants.                     )
                                         )
                                         )
_____ )

-1-

1

**COMPLAINT**

2      1.      Plaintiff William Barker ("Barker") complains that the California

3   Department of Corrections and Rehabilitation ("CDCR"), the State of California,

4   and Certified Nursing Assistants ("CNA") Stephen Osemwingie ("Osemwingie")

5   and Ms. Ramiscal ("Ramiscal") discriminated against him on the basis of his

6   disability at the California Health Care Facility ("CHCF") and, thus, violated state

7   and federal disabled access laws.

8

**PARTIES**

9      2.      Barker is a California resident with physical disabilities. He is in the

10   custody, care, and control of CDCR incarcerated at CHCF in Stockton, CA.  CDCR

11   physicians have diagnosed Barker with having a history of chronic infectious

12   disease, a right femur fracture with open reduction and internal fixation, and severe

13   degenerative arthritis in his right hip. Barker suffers from pain in his back,

14   shoulder, and neck.  Additionally, he has shrapnel lodged in his pelvic region that

15   surgeons are unable to remove which cause him pain when moving.  He requires a

16   wheelchair for ambulating both inside and outside of his cell.  He is unable to bend,

17   squat, or kneel, lift more than five pounds, climb stairs, and is subject to falls.

18      3.      Barker was designated DPW under the *Armstrong* Consent Decree, as

19   an inmate who requires the use of a wheelchair on a full-time basis due to a

20   permanent disability. He requires wheelchair accessible housing and accessible

21   paths of travel.

22      4.      The State of California is a public entity.

23      5.      CDCR is a department or agency (or both) of the State of California.

24      6.      Osemwingie is an employee of the State of California, was a CNA at

25   the time Barker's injury occurred, and was charged with the care, custody and

26   safety of the inmates at CHCF, including Barker.  Osemwingie was acting under

27   the color of state law during all times at issue.

28

-2-

7. Ramiscal is an employee of the State of California, was a CNA at the time Barker's injury occurred, and was charged with the care, custody and safety of the inmates at CHCF, including Barker. Ramiscal was acting under the color of state law during all times at issue.

## JURISDICTION

8. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for claims brought under Title II of the Americans with Disabilities Act of 1990 ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), and state law claims that arise under federal law because Barker's right to relief under those claims necessarily depend on resolving a substantial question of federal law.

9. Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

10. Barker's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## VENUE

11. All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## FACTS

12. The Disability Placement Program ("DPP") is the CDCR's set of plans, policies, and procedures to assure nondiscrimination against inmates/parolees with disabilities. The DPP applies to all CDCR institutions and facilities, all programs that CDCR provides or operates, and to all inmates who have disabilities that affect a major life activity, regardless of whether the disability impacts placement. Under this program, inmates with permanent mobility impairments, or other disabilities severe enough to require special housing and programming, are assigned to special placement in a "designated DPP facility."

-3-

13.     CHCF is a designated DPP facility.

14.     Designated DPP facilities are required to offer disabled inmates a range of programming equivalent to that available to nondisabled inmates.

15.     On or about March 3, 2015, Barker needed assistance in transferring himself from his wheelchair to the toilet.  CNAs Osemwingie and Ramiscal responded to Barker's call for assistance.

16.     Over Barker's objections to its use, Osemwingie and Ramiscal employed a hoyer lift to effectuate the transfer of Barker from his wheelchair to his toilet.  Osemwingie and Ramiscal failed to use the device as it was designed to be operated: rather than placing Barker's whole body in the lift, they instead placed the straps under each of Barker's arms and engaged the lift.

17.     The lift raised Barker approximately six inches above his wheelchair. Due to this improper use of the lift, Barker's back popped and he cried out in pain as he was being lifted.

18.     Osemwingie and Ramiscal lowered Barker back into his wheelchair, and Barker immediately requested medical attention to address the injury to his back.

19.     A nurse responded to Barker's request for medical attention approximately two and a half hours later.

20.     On or about March 9, 2015, Ramiscal helped Barker transfer from his wheelchair to the toilet and then left the room.

21.     After he was done using the toilet, Barker engaged his call button to request assistance transferring from the toilet back to his wheelchair.

22.     Barker had to engage his call button several times, and waited approximately 20 minutes before nursing staff arrived to assist him.

23.     As a result of sitting on the toilet for a prolonged period of time, Barker suffered from pain in his back, legs, and groin, and required additional pain

-4-

medication above and beyond what he is normally prescribed for pain management.

24.    On August 13, 2015, Barker exhausted all administrative remedies available to him.

25.    On May 19, 2016, the California Victim Compensation and Government Claims Board denied Barker's claim.

**COUNT ONE**

**Title II of the Americans with Disabilities Act of 1990**

26.    Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

27.    Barker is a qualified individual with a disability in the United States as defined by the ADA. 42 U.S.C. § 12102.

28.    The improper use of a hoyer lift to transfer Barker from his wheelchair, and a prolonged delay in receiving medical and nursing assistance resulted in discrimination against Barker by prolonging his suffering needlessly. The accommodations that Barker requires are necessary to perform daily life functions able-bodied individuals do not need. Had Barker not been physically disabled, he would not have been injured by the acts and omissions of defendants.

29.    Because these acts and omissions evince deliberate indifference, Barker seeks actual damages, costs, and legal expense under the ADA. 42 U.S.C. §§ 12133, 12205.

30.    Barker also seeks declaratory relief so that he may pursue statutory minimum damages under parallel state law claims.

## COUNT TWO

### Section 504 of the Rehabilitation Act of 1973

31.     Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794 (a).

32.     Section 504 of the Rehabilitation Act imposes the same obligations and liability on entities as Title II of the ADA. *See Wong v. Regents of the Univ. of Calif.*, 192 F.3d 807, 811 n.2 (9th Cir. 1999).

33.     Defendants receive federal funding.

34.     Defendants were deliberately indifferent to Barker's rights under the Rehab Act because defendants improperly used a hoyer lift to transfer Barker from his wheelchair, and unreasonably delayed responding to Barker's request for medical and nursing assistance.

35.     Barker suffered discrimination under a program that receives federal financial assistance because of defendants' indifference.

36.     Barker seeks actual damages and, reasonable attorney fees and costs under the Rehabilitation Act. 29 U.S.C. § 794(a)(2).

-6-

SER-18

1
                                     **PRAYER FOR RELIEF**

2
       WHEREFORE, Barker prays judgment against the defendants for:

3
       1.       General and special damages according to proof.

4
       2.       Attorneys' fees, litigation expenses, and costs of suit.

5
       3.       Interest at the legal rate from the date of the filing of this action.

6
       4.       Such other and further relief as the court may deem proper.

7

8
Dated: April 12, 2022           ZINK & LENZI

9

10
                               */s/ J.D. Zink*

11
                                J.D. ZINK
                                Attorney for Plaintiff Barker

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SER-19

1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    WILLIAM BARKER,                        No.  2:16-cv-3008 CKD P

12              Plaintiff,

13         v.                                ORDER

14    OSEMWINGIE, et al.,

15              Defendants.

16

17         Plaintiff has submitted a third amended complaint which the court must screen pursuant to

18    28 U.S.C. § 1915A(a).   The court has reviewed the third amended complaint and it appears there

19    is an error.  In paragraph 16, plaintiff complains about the manner in which a Hoyer lift was used

20    to transfer plaintiff from his wheelchair to his bed.  Over the course of this action, however,

21    plaintiff has maintained that defendants are liable for the manner in which a Hoyer lift was used

22    to transfer plaintiff from his wheelchair to a toilet.

23    /////

24    /////

25    /////

26    /////

27    /////

28    /////

1

1    In accordance with the above, IT IS HEREBY ORDERED that plaintiff is granted 14 days

2    to either file a fourth amended complaint to correct the error identified above or inform the court

3    he wishes to proceed on the third amended complaint as is.  If the court does not receive a

4    response to this order, this matter will proceed on the third amended complaint.

5    Dated:  April 7, 2022

6    _____
     CAROLYN K. DELANEY

7    UNITED STATES MAGISTRATE JUDGE

8

9

10   1
     bark3008.4th

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1  J.D. Zink, SBN 58726
2  **Zink & Lenzi**
   250 Vallombrosa Avenue, Suite 175
3  Chico, California  95926
   Telephone: (530) 895-1234
4  Facsimile: (530) 895-1254

5

6

7

8

9                            United States District Court
10                          Eastern District of California
11

12
   William Barker,                    )
13                                     )
              Plaintiff,               )   Case No. 2:16-cv-3008-CKD
14                                     )
15  v.                                 )   **Second Amended Complaint**
                                       )
16  California Department of Corrections)
17  and Rehabilitation; The State of   )
    California,                        )
18                                     )
19            Defendants.              )
                                       )
20  _____   )

21

22

23

24

25

26

27

28

-1-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT**

1.      Plaintiff William Barker ("Barker") complains that the California Department of Corrections and Rehabilitation ("CDCR"), the State of California, and Certified Nursing Assistants ("CNA") Stephen Osemwingie ("Osemwingie") and Ms. Ramiscal ("Ramiscal") discriminated against him on the basis of his disability at the California Health Care Facility ("CHCF") and, thus, violated state and federal disabled access laws.

**PARTIES**

2.      Barker is a California resident with physical disabilities. He is in the custody, care, and control of CDCR incarcerated at CHCF in Stockton, CA. CDCR physicians have diagnosed Barker with having a history of chronic infectious disease, a right femur fracture with open reduction and internal fixation, and severe degenerative arthritis in his right hip. Barker suffers from pain in his back, shoulder, and neck. Additionally, he has shrapnel lodged in his pelvic region that surgeons are unable to remove which cause him pain when moving. He requires a wheelchair for ambulating both inside and outside of his cell. He is unable to bend, squat, or kneel, lift more than five pounds, climb stairs, and is subject to falls.

3.      Barker was designated DPW under the *Armstrong* Consent Decree, as an inmate who requires the use of a wheelchair on a full-time basis due to a permanent disability. He requires wheelchair accessible housing and accessible paths of travel.

4.      The State of California is a public entity.

5.      CDCR is a department or agency (or both) of the State of California.

6.      Osemwingie is an employee of the State of California, was a CNA at the time Barker's injury occurred, and was charged with the care, custody and safety of the inmates at CHCF, including Barker. Osemwingie was acting under the color of state law during all times at issue.

-2-

1    7.    Ramiscal is an employee of the State of California, was a CNA at the

2    time Barker's injury occurred, and was charged with the care, custody and safety

3    of the inmates at CHCF, including Barker.  Ramiscal was acting under the color of

4    state law during all times at issue.

5                                    **JURISDICTION**

6    8.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343

7    for claims brought under Title II of the Americans with Disabilities Act of 1990

8    ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), and state

9    law claims that arise under federal law because Barker's right to relief under those

10   claims necessarily depend on resolving a substantial question of federal law.

11   9.    Supplemental jurisdiction for claims brought under parallel California

12   law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C.

13   § 1367.

14   10.    Barker's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

15                                       **VENUE**

16   11.    All actions complained of herein take place within the jurisdiction of

17   the United States District Court, Eastern District of California, and venue is

18   invoked pursuant to 28 U.S.C. § 1391(b), (c).

19                                        **FACTS**

20   12.    The Disability Placement Program ("DPP") is the CDCR's set of

21   plans, policies, and procedures to assure nondiscrimination against

22   inmates/parolees with disabilities. The DPP applies to all CDCR institutions and

23   facilities, all programs that CDCR provides or operates, and to all inmates who

24   have disabilities that affect a major life activity, regardless of whether the disability

25   impacts placement.   Under this program, inmates with permanent mobility

26   impairments, or other disabilities severe enough to require special housing and

27   programming, are assigned to special placement in a "designated DPP facility."

28

-3-

SER-24

13.     CHCF is a designated DPP facility.

14.     Designated DPP facilities are required to offer disabled inmates a range of programming equivalent to that available to nondisabled inmates.

15.     On or about March 3, 2015, Barker needed assistance in transferring himself from his wheelchair to the toilet.   CNAs Osemwingie and Ramiscal responded to Barker's call for assistance.

16.     Over Barker's objections to its use, Osemwingie and Ramiscal employed a hoyer lift to effectuate the transfer of Barker from his wheelchair to his bed.  Osemwingie and Ramiscal failed to use the device as it was designed to be operated: rather than placing Barker's whole body in the lift, they instead placed the straps under each of Barker's arms and engaged the lift.

17.     The lift raised Barker approximately six inches above his wheelchair. Due to this improper use of the lift, Barker's back popped and he cried out in pain as he was being lifted.

18.     Osemwingie and Ramiscal lowered Barker back into his wheelchair, and Barker immediately requested medical attention to address the injury to his back.

19.     A nurse responded to Barker's request for medical attention approximately two and a half hours later.

20.     On or about March 9, 2015, Ramiscal helped Barker transfer from his wheelchair to the toilet and then left the room.

21.     After he was done using the toilet, Barker engaged his call button to request assistance transferring from the toilet back to his wheelchair.

22.     Barker had to engage his call button several times, and waited approximately 20 minutes before nursing staff arrived to assist him.

23.     As a result of sitting on the toilet for a prolonged period of time, Barker suffered from pain in his back, legs, and groin, and required additional pain

SER-25

medication above and beyond what he is normally prescribed for pain management.

24.     On August 13, 2015, Barker exhausted all administrative remedies available to him.

25.     On May 19, 2016, the California Victim Compensation and Government Claims Board denied Barker's claim.

**COUNT ONE**

**Title II of the Americans with Disabilities Act of 1990**

26.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

27.     Barker is a qualified individual with a disability in the United States as defined by the ADA. 42 U.S.C. § 12102.

28.     The improper use of a hoyer lift to transfer Barker from his wheelchair, and a prolonged delay in receiving medical and nursing assistance resulted in discrimination against Barker by prolonging his suffering needlessly. The accommodations that Barker requires are necessary to perform daily life functions able-bodied individuals do not need. Had Barker not been physically disabled, he would not have been injured by the acts and omissions of defendants.

29.     Because these acts and omissions evince deliberate indifference, Barker seeks actual damages, costs, and legal expense under the ADA. 42 U.S.C. §§ 12133, 12205.

30.     Barker also seeks declaratory relief so that he may pursue statutory minimum damages under parallel state law claims.

-5-

## COUNT TWO

### Section 504 of the Rehabilitation Act of 1973

31.     Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794 (a).

32.     Section 504 of the Rehabilitation Act imposes the same obligations and liability on entities as Title II of the ADA. *See Wong v. Regents of the Univ. of Calif.*, 192 F.3d 807, 811 n.2 (9th Cir. 1999).

33.     Defendants receive federal funding.

34.     Defendants were deliberately indifferent to Barker's rights under the Rehab Act because defendants improperly used a hoyer lift to transfer Barker from his wheelchair, and unreasonably delayed responding to Barker's request for medical and nursing assistance.

35.     Barker suffered discrimination under a program that receives federal financial assistance because of defendants' indifference.

36.     Barker seeks actual damages and, reasonable attorney fees and costs under the Rehabilitation Act. 29 U.S.C. § 794(a)(2).

-6-

1

## PRAYER FOR RELIEF

2      WHEREFORE, Barker prays judgment against the defendants for:

3      1.     General and special damages according to proof.

4      2.     Attorneys' fees, litigation expenses, and costs of suit.

5      3.     Interest at the legal rate from the date of the filing of this action.

6      4.     Such other and further relief as the court may deem proper.

7

8   Dated: April 1, 2022         ZINK & LENZI

9

10                */s/ J.D. Zink*

11                J.D. ZINK

12                Attorney for Plaintiff Barker

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SER-28

1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WILLIAM BARKER,                            No.  2:16-cv-3008 CKD P

12              Plaintiff,

13        v.                                     ORDER

14   OSEMWINGIE, et al.,

15              Defendants.

16

17          This matter was remanded to this court from the Ninth Circuit on December 21, 2021.

18   Pursuant to the terms of the remand order, plaintiff is granted 30 days within which to file a third

19   amended complaint.  In the third amended complaint, plaintiff may raise claims under Title II of

20   the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.) and the Rehabilitation Act of

21   1973 (29 U.S.C. § 701 et seq.).  Plaintiff may also raise a claim for retaliation under Title V of the

22   Americans with Disabilities Act (42 U.S.C. § 12203).  The third amended complaint must comply

23   with the terms of the remand order, bear the docket number assigned this case, and must be

24   /////

25   /////

26   /////

27   /////

28   /////

1    labeled "Third Amended Complaint."  Failure to file a third amended complaint in accordance

2    with this order will result in a recommendation that this action be dismissed.

3    Dated:  March 4, 2022

4    _____
     CAROLYN K. DELANEY

5    UNITED STATES MAGISTRATE JUDGE

6

7

8    1
     bark3008.lta
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    2

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 29 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WILLIAM BARKER, | No.   20-15503 |
| Plaintiff-Appellant, | 20-15840 |
| v. | D.C. No. 2:16-cv-03008-CKD |
| OSEMWINGIE; RAMISCAL, | |
| Defendants-Appellees. | |
| and | MEMORANDUM[*] |
| STATE OF CALIFORNIA; CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | |
| Defendants. | |

Appeals from the United States District Court
for the Eastern District of California
Carolyn K. Delaney, Magistrate Judge, Presiding

Argued and Submitted November 17, 2021
San Francisco, California

Before:  WATFORD and FRIEDLAND, Circuit Judges, and KORMAN,[**] District Judge.

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

William Barker sued the State of California, the California Department of
Corrections and Rehabilitation (CDCR), and CDCR employees Osemwingie and
Ramiscal for harms arising from a failed attempt to transfer Barker from his
wheelchair to the toilet.  The district court dismissed with prejudice his claims
under Titles II and V of the Americans with Disabilities Act (ADA) and Section
504 of the Rehabilitation Act (RA).  The court later granted summary judgment to
defendants on Barker's Eighth Amendment claim for inadequate medical treatment
under 42 U.S.C. § 1983.  We affirm entry of summary judgment for defendants on
Barker's Eighth Amendment claim, but we vacate dismissal of his claims under the
ADA and RA and remand to the district court with instructions to grant Barker
leave to amend his complaint.

**1.**  The district court properly granted summary judgment to Osemwingie
and Ramiscal on Barker's Eighth Amendment claim for inadequate medical
treatment.  Barker failed to raise a triable issue of fact as to whether defendants
acted with deliberate indifference to his serious medical needs.  *See Jett v. Penner*,
439 F.3d 1091, 1096 (9th Cir. 2006).  The district court properly excluded
statements allegedly made by Nurse Coloma as inadmissible hearsay, and
defendants submitted unrebutted expert evidence supporting their assertion that use
of the lift was medically appropriate, even if Barker suffered from a chronic back
condition.  Thus, even if a genuine dispute exists as to whether Barker informed

defendants of his back condition, he cannot satisfy the objective prong of the deliberate indifference test applicable to this claim. We also affirm the district court's award of costs to defendants, as those costs were incurred solely in connection with Barker's Eighth Amendment claim, and Barker raises no independent challenge to the propriety of the award.

**2.** The district court erred in dismissing Barker's Title II and RA claims without leave to amend. Transferring an inmate from a wheelchair to the toilet is an accommodation to provide access to toileting services, rather than medical treatment for a disability. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1068 (9th Cir. 2010). Thus, the district court improperly relied on *Simmons v. Navajo County*, 609 F.3d 1011, 1022 (9th Cir. 2010) (holding that denial of medical treatment cannot form the basis of an ADA claim), in concluding that Barker's claims were barred as a matter of law.

Barker's second amended complaint does not adequately allege failure to provide access to a service under Title II or the RA, but he should have been granted leave to amend to cure the deficiencies. To allege a plausible claim for relief, Barker will need to provide additional facts explaining how the State's failed attempt to provide access to toileting services by means of the Hoyer lift amounted to a denial of such services on account of his disability. In addition, because Barker seeks damages under Title II, he will need to plead facts plausibly

suggesting that the defendants acted with deliberate indifference under the test established in *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138–40 (9th Cir. 2001). We note that the *Duvall* standard differs from the standard for deliberate indifference applicable to Barker's Eighth Amendment claim, so the record developed in connection with the latter claim does not necessarily foreclose Barker's ability to assert a viable Title II damages claim.  Since it is not clear that amendment would be futile, we vacate the dismissal of the Title II and RA claims and remand with instructions to grant Barker leave to amend those claims.

**3.**  The district court abused its discretion in dismissing Barker's retaliation claim under Title V of the ADA based on improper joinder.  *See* Fed. R. Civ. P. 18(a).  The court's ruling was predicated on its ruling dismissing Barker's Title II and RA claims without leave to amend.  Because an opportunity to amend those claims against the State and CDCR should have been granted before any final judgment could be entered, those defendants should have remained in the suit and Barker's Title V claim against the same defendants was not improperly joined. However, as with Barker's Title II and RA claims, the allegations in the second amended complaint do not adequately support a claim under Title V.  In particular, the allegations do not plausibly suggest a causal link between Barker's protected activities and the alleged retaliation.  *See T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 472–73 (9th Cir. 2015).  Nevertheless, because it

is not clear that amendment would be futile, we vacate dismissal of the Title V

claim and remand with instructions to grant leave to amend.

**AFFIRMED in part, VACATED in part, and REMANDED.**

Barker shall recover his costs on appeal.

1  XAVIER BECERRA, State Bar No. 118517
   Attorney General of California
2  PETER A. MESHOT, State Bar No. 117061
   Supervising Deputy Attorney General
3  DIANA ESQUIVEL, State Bar No. 202954
   Deputy Attorney General
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone: (916) 210-7320
6    Facsimile: (916) 322-8288
     E-mail:  Diana.Esquivel@doj.ca.gov
7  *Attorneys for Defendants Osemwingie and Ramiscal*

8           IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10                  SACRAMENTO DIVISION

11

12

13 **WILLIAM BARKER,**                    No. 2:16-cv-03008 CKD (PC)

14                        Plaintiff,     **DECLARATION OF DIANA ESQUIVEL
                                         IN SUPPORT OF DEFENDANTS'
15      v.                               MOTION FOR SUMMARY JUDGMENT**

16 **OSEMWINGIE, et al.,**               Date:        May 22, 2019
                                         Time:        10:00 a.m.
17                       Defendants.     Courtroom:   24 (8th Floor)
                                         Judge:       Hon. Carolyn K. Delaney
18                                       Trial Date:  Not yet set
                                         Action Filed: April 12, 2017

19

20      I, Diana Esquivel, declare:

21      1.  I am admitted to practice law in California and before this Court, and am a Deputy

22 Attorney General with the Office of the Attorney General for the State of California, attorneys of

23 record for Defendants Osemwingie and Ramiscal.

24      2.  Exhibit **A** is a copy of Plaintiff's Bed Assignment history from the California

25 Department of Corrections and Rehabilitation (CDCR), showing Plaintiff's housing assignments

26 from April 2014 to May 2018.

27

28

                                    1

3.  Exhibit **B** includes excerpts of the relevant portions of the condensed transcript of the Plaintiff's deposition taken on October 3, 2018.

4.  Exhibit **C** includes a copy of the relevant records from Plaintiff's medical file with CDCR and the declaration of the custodian of records authenticating the documents.  As required under Federal Rule of Civil Procedure 5.2 and Local Rule 140(a), birthdates and other confidential information has been redacted.

5.  Attached as Exhibit **D** is a copy of Dr. Bennett Feinberg's expert report that Defendants disclosed.

6.  Exhibit **E** is a true and correct copy of a 2015 calendar that I downloaded from the internet.

7.  Exhibit **F** is a copy of Defendants' Expert Disclosures that includes the report of Michelle E. Camicia, PhD, RN, PHN, CRRN, CCM, NEA-BC, FAHA.

8.  Exhibit **G** is a true and correct copy of Plaintiff's responses to the first set of interrogatories, dated August 6, 2018.  To date, Plaintiff has not provided a written, signed verification to these responses.  At his deposition, Plaintiff testified that he reviewed the responses and signed a verification attesting the responses were true and correct to the best of his knowledge.  (*See* Barker Dep. 24:10-25:6.)

9.  Exhibit **H** is a true and correct copy of Plaintiff's responses to the first set of production requests, dated August 6, 2018.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Dated:  April 24, 2019                                     ___*/s/ Diana Esquivel*___
                                                                            Diana Esquivel

SA2017304374
13655026.docx

2

# Exhibit F

# MICHELLE E. CAMICIA

PhD, RN, PHN, CRRN, CCM, NEA-BC, FAHA

201 Caribe Isle • Novato, CA 94949

(415) 601-2621 • mecamicia@gmail.com

January 24, 2019

Diana Esquivel
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  95814

RE: *Barker, William v. Osemwingie, Stephen and Ramiscal, Maria*
USDC, Eastern District of California, No. 2:16-cv-03008 JAM-CKD (PC)

## INTRODUCTION

I am a registered nurse with substantial experience in the care of individuals with  mobility impairments. I have been retained as an expert to review materials and provide expert opinions on this matter, including the state of the nursing and scientific literature as of the date of the event, and to consider and render expert opinion on whether the nursing care rendered by the Defendants at the California Health Care Facility in Stockton to Mr. William Barker on March 3, 2015, was reasonable and appropriate and whether the standard of care was met. After careful review, it is my opinion, to a reasonable degree of clinical certainty, that the care provided by the Defendant Certified Nursing Assistants to Mr. Barker was appropriate, and the nursing care rendered to him did not breach the standard of care.

## MATERIALS REVIEWED

I reviewed the following material pertaining to the above-referenced case:

1. Plaintiff's Second Amended Complaint, dated January 19, 2018
2. Medical records of William Barker (bates stamp AG01-AG01274)
3. Deposition Transcript of William Barker, October 3, 2018
4. Plaintiff's Response to Interrogatories, Set One

**OVERVIEW OF OPINIONS**

*1.* The utilization of a mechanical lift to move Mr. Barker from the wheelchair to the toilet by the defendants (Osemwingie and Ramiscal) at California Health Care Facility in Stockton was appropriate and met the standard of care.

*2.* The approach used to move Mr. Barker with the floor-lift and sling was appropriate and does not indicate a breach in the standard of care.

**ANALYSIS**

Plaintiff William Barker is a wheelchair dependent inmate who has been incarcerated at the California Health Care Facility (CHCF) in Stockton since February 28, 2015 to the present. Mr. Barker experiences chronic right hip and back pain, weakness and muscle spasms in his legs, and claims he does not have functional use of his right leg. He has had varying ability to bear weight in his lower extremities and noted to be unable to bear weight on February 25, 2015, in addition to being unable to stand. He has used a wheelchair for mobility for an extended period of time, and had numerous falls in January 2015. Since that time, he reported his left hip was hurting and has required assistance with moving from one surface to another (e.g. bed to chair), and on January 27, 2015, he required the assistance of two people to move from the wheelchair to a gurney. Mr. Barker reports that moving from his wheelchair to the toilet is the most challenging transfer for him. The amount of assistance he required for transfers varied, from only needing about 25% assistance of a care provider (minimal assistance) to requiring two health care providers assisting with 50% of the effort (moderate assistance), to that of requiring total assistance from a care provider.

Mr. Barker alleges that on March 3, 2015, two Certified Nursing Assistants (CNAs), Stephen Osemwingie and Maria Ramiscal, improperly used the Hoyer lift when attempting to assist him move from the wheelchair to the toilet, causing injury to his chronic back. Mr. Barker claims that

2

the CNAs were deliberately indifferent to his serious medical needs by using the lift in the manner that they did despite knowledge of his chronic back condition.

## DETAILED REVIEW OF OPINIONS

1. *The utilization of a mechanical lift to move Mr. Barker from the wheelchair to the toilet by the Defendants was appropriate and met the standard of care.*

Based on the documentation reviewed above, Defendants' actions met the standard of care. Mr. Barker is a large, heavy-set man who weighs approximately 250 pounds. He requires the use of a wheelchair for mobility. He is unable to move from one surface to another without assistance, however, the amount of assistance required varies. The amount of assistance closest to the March 3, 2015 event was minimal assistance of two people. Given that Mr. Barker weighs approximately 250 pounds, he would require each of the persons assisting him with a manual transfer (no patient lifting equipment) to lift approximately 62 pounds each.  However, Mr. Barker was known to require much more assistance than this, including total assistance with transfers.

Moving patients from one surface to another is a high-risk activity and results in biomechanical strain to the helper. The maximum weight that a helper should manually lift under the best of circumstances is 35 pounds. Transferring a patient from the chair to the toilet is considered a high-risk-patient-handling task. Carrying out an activity that exceeds a helper's  biomechanical capabilities causes damage to the musculoskeletal system. Manually lifting patients who weigh more than 35 pounds (even under optimal circumstances) is such an activity and, consequently, results in injury to the helper. Such patient-handling activities are an occupational risk for members of the nursing staff, and nursing roles are among the highest risk for injury across all vocations. Because of this, it is widely accepted that manual lifting of patients by health care providers should be minimized in all cases and eliminated whenever possible. This is achieved

3

through the use of mechanical lifts, such as the Hoyer lift, for moving patients. Use of such mechanical lifts for moving patients is safer for both the patient and the health care professional. The selection of a patient lift is determined by assessment criteria for safe patient handling and movement. This includes the patient's level of assistance, weight-bearing capability, upper-extremity strength, level of cooperation, weight, and height. The portable lift with a sling (the device used by the Defendants on Mr. Barker) is the appropriate device for lifting patients who are partial- or non-weight-bearing for transfers from wheelchair to the toilet.

Further, the selection of a device must always consider the situation where the most help is needed. Whenever there is variation in the patient's function (e.g. able to help more sometimes than at other times), the device selected needs to reflect the scenario where the most help is needed. Mr. Barker was new to the facility staff. The information available to the nursing staff providing care for Mr. Barker on March 2, 2015, indicates that he is unable to bear weight and needs assistance with transfers. His medical record reflects that he "attempts to go dead weight when male nurses assisting him." Further, he refused to stand on multiple occasions, and was requesting maximum assistance to transfer just one week prior to the event. Based on these factors and the risk a manual lift posed to both Mr. Barker and the Defendants, it was appropriate for the Defendants to use the Hoyer lift to transfer him from his chair to the toilet on March 3, 2015.

## 2. *The approach used to move Mr. Barker with the floor-lift and sling was appropriate and does not indicate a breach in the standard of care.*

A seated sling is used to transfer patients from seated positions to seated positions (e.g. chair to toilet) with a floor-patient-lifting device. However, Mr. Barker complained that if the bottom hooks of the sling were utilized, it would cause pain to his scrotum or testicles as a result of the presence of a bullet.  The Defendants accommodated his request and only hooked the top

4

Ex. F-8

two upper-section hooks. Full-body sling lifts when secured by the upper section provide partial

support and assistance for patients with some weight-bearing ability, acting in a similar manner to

that of a stand-assist lifting device or an appropriate manual lift with the assistance of two people.

The Defendants managed Mr. Barker's mobility needs appropriately. Two people were in

attendance during the transfer, and the mechanical floor-based sling lift was assisting with the

transfer. Mr. Barker's chronic back condition was not a contraindication to the use of the

mechanical lift in this manner.  As stated above, the manner in which the Defendants employed

the mechanical lift acted in the same manner as if the Defendants had manually lifted Mr.

Barker, but without the risk of injury to either patient or staff. Although Mr. Barker alleges that

his back was injured because of the manner in which the mechanical lift was used, I do not see

any evidence that his back would not have been injured had the Defendants performed a manual

lift instead.  Based on Mr. Barker's complaints of pain to his scrotum if the bottom hooks had

been utilized, it would have been improper for the Defendants to forcibly move him in a manner

which would have certainly caused him pain. For these reasons, the process and steps taken to

mechanically assist Mr. Barker with the transfer by the Defendants were appropriate and met

the standard of care.

## BACKGROUND

I am the Director for Kaiser Foundation Rehabilitation Center in Vallejo, California. I

am a Certified Registered Rehabilitation Nurse (CRRN) specializing in care for individuals with

disabling and chronic conditions. I am a past president of the Association of Rehabilitation

Nurses and an expert in the field of rehabilitation nursing.

As required under Federal Rule of Civil Procedure 26, Appendix A is a copy of my

current Curriculum Vitae, which includes a list of papers that I have authored. Appendix B is a

list of all cases in which I have testified as an expert in trial or deposition within the preceding

Ex. F-9

four years. Appendix C is my fee schedule.

My expertise has been formed over time from my years of clinical practice, reading, continuing education and research, including the manuscripts included in Appendix A. The opinions stated above are true and correct within a reasonable degree of clinical probability.

Respectfully,

*Michelle Camicia*

Michelle Camicia, PhD, RN, MSN, CRRN, CCM, NEA-BC, FAHA

6

Scottlynn J Hubbard IV, SBN 212970
Stephanie L. Ross, SBN 297840
**DISABLED ADVOCACY GROUP, APLC**
12 Williamsburg Lane
Chico, CA 95926
Telephone: (530) 895-3252
Facsimile: (530) 894-8244

United States District Court

Eastern District of California

| | |
|---|---|
| William Barker, | ) |
| Plaintiff, | ) **Case No. 2:16-cv-3008-CKD** |
| | ) |
| v. | ) **Plaintiff's Second Amended** |
| | ) **Complaint** |
| Stephen Osemwingie, CNA; Ms. | ) |
| Ramiscal, CNA, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| _____ | ) |

*Barker v. California Department of Corrections and Rehabilitation, et al.*
**Plaintiff's Second Amended Complaint**                    **Case No. 2:16-cv-3005-CKD**
Page 1

**SER-45**

1

**COMPLAINT**

2      1.      Plaintiff William Barker ("Barker") complains that Certified

3   Nursing Assistants ("CNA") Stephen Osemwingie ("Osemwingie") and Ms.

4   Ramiscal ("Ramiscal") discriminated against him on the basis of his disability at

5   the California Health Care Facility ("CHCF") and, thus, violated Barker's right to

6   be free of cruel and unusual punishment under the Eighth Amendment of the

7   United States Constitution.

8

**PARTIES**

9      2.      Barker is a California resident with physical disabilities. He is in the

10   custody, care, and control of California Department of Corrections and

11   Rehabilitation ("CDCR") incarcerated at CHCF in Stockton, CA.   CDCR

12   physicians have diagnosed Barker with having a history of chronic infectious

13   disease, a right femur fracture with open reduction and internal fixation, and

14   severe degenerative arthritis in his right hip. Barker suffers from pain in his back,

15   shoulder, and neck.   Barker also has shrapnel lodged in his pelvic region that

16   surgeons are unable to remove which cause him pain when moving.

17   Additionally, Barker is a large, heavy-set man who exceeds 250 pounds.   He

18   requires a wheelchair for ambulating both inside and outside of his cell, and

19   cannot transfer to and from his wheelchair unaided.  He is unable to bend, squat,

20   or kneel, lift more than five pounds, climb stairs, and is subject to falls.

21      3.      Barker was designated DPW under the *Armstrong* Consent Decree,

22   as an inmate who requires the use of a wheelchair on a full time basis due to a

23   permanent disability. He requires wheelchair accessible housing and accessible

24   paths of travel.

25      4.      Osemwingie is an employee of the State of California, was a CNA at

26   the time Barker's injury occurred, and was charged with the care, custody and

27

28

1    safety of the inmates at CHCF, including Barker.  Osemwingie was acting under
2    the color of state law during all times at issue.

3        5.    Ramiscal is an employee of the State of California, was a CNA at
4    the time Barker's injury occurred, and was charged with the care, custody and
5    safety of the inmates at CHCF, including Barker.  Ramiscal was acting under the
6    color of state law during all times at issue.

7                              **JURISDICTION**

8        6.    This Court has original jurisdiction under 42 U.S.C. § 1983 for
9    claims brought under the Eighth Amendment of the United States Constitution
10   because Barker complains that his civil rights were violated.

11       7.    Barker's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

12                               **VENUE**

13       8.    All actions complained of herein take place within the jurisdiction of
14   the United States District Court, Eastern District of California, and venue is
15   invoked pursuant to 28 U.S.C. § 1391(b), (c).

16                               **FACTS**

17       9.    The Disability Placement Program ("DPP") is the CDCR's set of
18   plans,    policies,    and    procedures    to    assure    nondiscrimination    against
19   inmates/parolees with disabilities. The DPP applies to all CDCR institutions and
20   facilities, all programs that CDCR provides or operates, and to all inmates who
21   have disabilities that affect a major life activity, regardless of whether the
22   disability impacts placement.  Under this program, inmates with permanent
23   mobility impairments, or other disabilities severe enough to require special
24   housing and programming, are assigned to special placement in a "designated
25   DPP facility."

26       10.    CHCF is a designated DPP facility.

27
28

*Barker v. California Department of Corrections and Rehabilitation, et al.*
**Plaintiff's Second Amended Complaint**                    **Case No. 2:16-cv-3005-CKD**

SER-47

11.     Designated DPP facilities are required to offer disabled inmates a range of programming equivalent to that available to nondisabled inmates.

12.     On or about March 3, 2015, Barker needed assistance in transferring himself from his wheelchair to the toilet.   CNAs Osemwingie and Ramiscal responded to Barker's call for assistance.

13.     Over Barker's objections to its use, Osemwingie and Ramiscal employed a hoyer lift to effectuate the transfer of Barker from his wheelchair to the toilet.

14.     A hoyer lift is a specialized hydraulic lift with a U-shaped sling that is designed to move patients that are unable to stand on their own and/or whose weight makes it unsafe to move or lift them manually.   In order to properly use a hoyer lift, the operator must slide the U-shaped sling behind the individual to be moved, and then secure the individual's legs by crossing the sling's straps before attaching the straps to the lift cradle and raising the individual.  Once a hoyer lift is properly deployed, the individual is in a seated position.

15.     Osemwingie and Ramiscal failed to use the device as it was designed to be operated: rather than placing Barker's whole body in the lift, they instead placed the straps under each of Barker's arms and engaged the lift.

16.     The lift raised Barker approximately six inches above his wheelchair.  Due to this improper use of the lift, Barker's back popped and he cried out in pain as he was being lifted.

17.     Osemwingie and Ramiscal lowered Barker back into his wheelchair, and Barker immediately requested medical attention to address the injury to his back.

18.     A nurse responded to Barker's request for medical attention approximately two and a half hours later.

*Barker v. California Department of Corrections and Rehabilitation, et al.*
**Plaintiff's Second Amended Complaint**                    **Case No. 2:16-cv-3005-CKD**
Page 4

SER-48

1    19.    Osemwingie and Ramiscal knew how to properly deploy a hoyer lift from their CNA training, and used the lift regularly if not daily.  Osemwingie and Ramiscal knew that, because Barker is a large, heavy-set man exceeding 250 pounds, the improper way in which they used the hoyer lift would result in lift failure and/or injury to Barker.

20.    On August 13, 2015, Barker exhausted all administrative remedies available to him.

21.    On May 19, 2016, the California Victim Compensation and Government Claims Board denied Barker's claim.

### COUNT ONE

### U.S. CONST. amend. VIII (Eighth Amendment)

### Against defendants Osemwingie and Ramiscal

22.    Defendants Osemwingie and Ramiscal – in their individual capacity and acting under color of law – violated plaintiff's right to be free of cruel and unusual punishment, guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

23.    The Eighth Amendment prohibits "cruel and unusual punishments." U.S. CONST. amend. VIII.

24.    The Supreme Court holds that "[d]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

25.    In the Ninth Circuit, the test for deliberate indifference consists of two parts. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  First, plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Id*. Plaintiff has a serious medical need when he

has "a medical condition that significantly affects an individual's daily activities." *McGuckin v. Smith,* 974 F.2d 1050, 1059-1060 (9th Cir.1992), overruled in part on other grounds by *WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997).

26.    Second, the plaintiff must show the defendant's response to the need was deliberately indifferent by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Penner*, 439 F.3d at 1096.  Indifference may appear when prison officials deny, delay, or intentionally interfere with medical treatment.  *Id.*  A prisoner need not show his harm was substantial.  *Id.*

27.    Here, Osemwingie and Ramiscal were deliberately indifferent to Barker's serious medical needs.  First, Barker has a serious medical need, as he is unable to walk or stand and requires the use of a wheelchair, and cannot transfer to and from his wheelchair unaided.  Second, Osemwingie and Ramiscal knew that, because Barker is a large, heavy-set man exceeding 250 pounds, the improper way in which they used the hoyer lift would result in lift failure and/or injury to Barker.  Indeed, their failure to properly deploy the hoyer lift actually did result in injury to Barker's back.

28.    Barker seeks general damages. He also seeks reasonable compensation for his legal costs, attorney's fees, and expert fees. 42 U.S.C. §§ 1988(b), (c).

**PRAYER FOR RELIEF**

WHEREFORE, Barker prays judgment against the defendants for:

1.    General damages.

2.    Attorneys' fees, litigation expenses, and costs of suit.

3.    Interest at the legal rate from the date of the filing of this action.

4.    Such other and further relief as the court may deem proper.


Dated: January 19, 2018            DISABLED ADVOCACY GROUP, APLC


*/s/ Scottlynn J Hubbard*
SCOTTLYNN J HUBBARD
Attorney for Plaintiff Barker

*Barker v. California Department of Corrections and Rehabilitation, et al.*
**Plaintiff's Second Amended Complaint**                          **Case No. 2:16-cv-3005-CKD**
Page 7

**SER-51**